**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PENNY L. BENNETT,**

                                        **Plaintiff,**

        **vs.**                                                    **07-CV-0780**
                                                                   **(NAM)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

IACONIS, BAUM LAW FIRM                   Keith R. Wolfe, Esq.
282 Genesee Street
P.O. Box 250
Chittenango, New York 13037
*Attorneys for Plaintiff*

Richard Hartunian                        Karla J. Gwinn, Esq.
United States Attorney for               Special Assistant U.S. Attorney
the Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
*Attorneys for Defendant*

Social Security Administration           Barbara L. Spivak, Esq.
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
*Attorneys for Defendant*

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.        INTRODUCTION**

        Plaintiff Penny Bennett, brings the above-captioned action pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny her application for disability benefits ("DIB").

## II.      BACKGROUND

On April 30, 2004, plaintiff filed an application for DIB. (T. 425).[1]  Plaintiff was 51 years old at the time of the application with past work experience as a nurse's aide and waitress. (T. 442).  Plaintiff claimed that she became disabled on May 4, 2002 due to a lumbar spine sprain, bulging discs in her lower back/neck, a heart attack and diabetes.  (T. 431).  On January 11, 2005, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on December 14, 2005. (T. 407, 693).  On January 25, 2006, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 18-28).  The Appeals Council denied plaintiff's request for review on May 25, 2007 making the ALJ's decision the final determination of the Commissioner. (T. 10).  This action followed.

## III.     DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."   The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the

---

[1] "(T.)" refers to pages of the Administrative Transcript, Dkt. No. 8.

Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

On January 25, 2006, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since her alleged onset date. (T. 19). At step two, the ALJ concluded that plaintiff suffered from degenerative disc disease which qualified as a "severe impairment" within the meaning of the Social Security Regulations (the "Regulations"). (T. 24). At the third step of the analysis, the ALJ determined that plaintiff's impairment did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 24). The ALJ found that plaintiff had the residual functional capacity ("RFC") to, "lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk 6 hours in an 8-hour day, sit 6 hours in an 8-hour day, and push and/or pull with limitations in her upper extremities". (T. 26). At step four, the ALJ concluded that plaintiff had the residual functional capacity to perform her past work as a nurse's aide and waitress. (T. 26). At the final step, the ALJ concluded that plaintiff had the

ability to do these jobs as they are generally performed in the national economy. (T. 26). Therefore, the ALJ concluded plaintiff was not under a disability as defined by the Social Security Act.  (T. 27).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ failed to properly apply the treating physician rule; (2) the ALJ improperly assigned "greater weight" to the opinions of State agency examining and consultative physicians; 3) the ALJ failed to properly assess plaintiff's credibility; and (4) new and material evidence supports plaintiff's contentions and would have resulted in a favorable decision for plaintiff.  (Dkt. No. 16).

## A.    Treating Physician Rule

Plaintiff argues that the ALJ improperly assigned minimal weight to the opinions of his treating physician, Louis Bonavita, Jr., M.D.  Plaintiff contends that Dr. Bonavita's opinions are entitled to great weight as they are supported by objective medical testing and a long period of treatment.  (Dkt. No. 15, p. 13).   The Commissioner argues that Dr. Bonavita's opinions are: (1) not supported by clinical test results; (2) contrary to the physician's treatment records and other medical evidence; and (3)  inconsistent with plaintiff's testimony of her abilities. (Dkt. No. 19, p. 8).

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).  The ALJ is required to accord special evidentiary weight to the opinion of the treating

physician, as long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and is supported by the administrative record. *Schnetzler v. Astrue*, 533 F.Supp.2d 272, 285 (E.D.N.Y. 2008).   An ALJ may refuse to consider the treating physician's opinion controlling if he is able to set forth good reason for doing so. *Barnett v. Apfel*, 13 F.Supp.2d 312, 316 (N.D.N.Y. 1998).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Peralta v. Barnhart*, 2005 WL 1527669, at *10 (E.D.N.Y. 2005) (remanding case where the ALJ failed to explain the weight, if any, assigned to the treating physician's opinions) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).  The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 F.App'x 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)).  The less consistent an opinion is with the record as a whole, the less weight it is to be given.  *Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007); *see also Otts v. Comm'r of Soc. Sec.*, 249 F.App'x 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").  Similarly, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported.  20 C.F.R. §§ 404.1527(d)(3), 416.927 (d)(3); *see also Stevens*, 473 F.Supp.2d at 362; *see also Cruz v. Barnhart*, 2006 WL 1228581, at *11 (S.D.N.Y. 2006) (holding that the Commissioner is not required to give controlling weight to a treating physician whose opinion is not supported by treating physician's own records).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (I) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).

A treating physician's belief that a plaintiff is "totally disabled" is irrelevant since that determination is reserved for the Commissioner. *Taylor v. Barnhart*, 83 F.App'x 347, 349 (2d Cir. 2003); *Gladden v. Comm'r of Soc. Sec.*, 337 F.App'x 136, 138 (2d Cir. 2009). While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence. *See Martin v. Astrue*, 337 F.App'x 87, 89 (2d Cir. 2009).

With regard to this action, plaintiff alleges an onset date of May 4, 2002. However, plaintiff began treating with Dr. Bonavita in July 1999 for complaints of pain in her lower back due to a slip and fall at work.[2] (T. 207). Plaintiff treated with Dr. Bonavita every six to eight weeks through March 2002. During that time, Dr. Bonavita continually diagnosed plaintiff with a "LSS" or lumbar spinal stenosis[3] and prescribed various medications including Motrin, Norflex

---

[2] Dr. Bonavita was affiliated with CNY Family Care. The record does not indicate whether Dr. Bonavita specialized in any area of medicine.

[3] *See* www.medical-transcription1.com (last visited July 15, 2010).

and Celebrex.[4]   On May 4, 2000, an MRI of plaintiff's lumbar spine revealed degenerative

dessication at L2-3 and a disc bulge at L5-S1 adjacent to the nerve root. (T. 228).

After the alleged onset date, plaintiff's first visit with Dr. Bonavita was May 7, 2002. (T.

511).   At that time, plaintiff complained of pain in her right leg and "sciatica burning".  Dr.

Bonavita did not refer to any new incident or accident at that time.  Dr. Bonavita noted that

plaintiff exhibited lower spine tenderness, negative straight leg raising ("SLR") and motor

strength of 5/5.  Dr. Bonavita also found plaintiff capable of bending to 70 degrees and extending

to 5 degrees with pain.  Dr. Bonavita diagnosed plaintiff with LSS and advised her to continue

taking Celebrex, Norflex and Ultram.[5]  On July 16, 2002, plaintiff returned to Dr. Bonavita

complaining of pain in her lower back with muscle soreness. (T. 513).  Upon examination, Dr.

Bonavita noted that plaintiff demonstrated bilateral lumbar spine tenderness, flexion to 40 degrees

with pain, extension to 10 degrees with pain, negative SLR, and DTR's 2+.[6] (T. 513).  Dr.

Bonavita diagnosed plaintiff with LSS and a thoracic strain and advised her to continue taking her

medication. (T. 513).

On July 28, 2002, Dr. Bonavita wrote a letter to plaintiff's attorney stating that plaintiff

had great difficulty in performing simple tasks of activities of daily living and that she was in

constant pain and had severely limited of range of motion in her back and cervical spine. (T. 405).

Dr. Bonavita stated, "she had [] documented objective evidence of palpable muscle spasms of her

---

[4] Norflex is a muscle relaxant used for acute spasms in voluntary muscles.  *Dorland's Illustrated Medical Dictionary* 1309, 1358 (31st ed. 2007).  Celebrex is a nonsteroidal antiinflammatory drug used for symptomatic treatment of osteoarthritis and rheumatoid arthritis.  *Id.* at 317.

[5] Ultram is used for the treatment of moderate to moderately severe pain following surgical procedures. *Dorlands's* at 2027.

[6] SLR is an abbreviation for straight leg raising.  DTR is an abbreviation for Deep Tendon Reflexes. *See* www.medilexicon.com (last visited September 30, 2010).

neck and her cervical spine and lumbosacral spine.  Her MRI scans are negative in these regions since the MRI scans cannot pick up or detect muscle injuries only nerve or disc problems." (T. 405).

From July 2002 until September 2005, plaintiff had twenty visits with Dr. Bonavita. (T. 513-689).   During that time, Dr. Bonavita continually noted that plaintiff's DTR's were 2+; plaintiff exhibited 25 % ROM in cervical spine; and negative SLR.  Dr. Bonavita noted that range of motion in plaintiff's lumbar spine fluctuated between 50-80 degrees on flexion and 5-10 degrees on extension with pain and plaintiff's grip strength and motor strength were 5/5.  Dr. Bonavita continually diagnosed plaintiff with LSS.  On April 27, 2004, an MRI of plaintiff's lumbar spine revealed disc bulges throughout but no "HNP" (herniated nucleus pulposus)[7] or nerve root impingement. (T. 534).

On July 18, 2005, Dr. Bonavita completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (T. 675).  Dr. Bonavita opined that plaintiff could occasionally lift and/or carry less than 10 pounds but could not lift and/or carry any weight frequently. (T. 675).  Dr. Bonavita also concluded that plaintiff could stand and/or walk for less than 2 hours in an 8-hour workday; must alternate between sitting and standing; and could never climb, kneel, crouch, crawl or stoop but could occasionally balance. (T. 676-677).

On July 29, 2005, an MRI of plaintiff's cervical spine was "negative" and an MRI of plaintiff's lumbar spine revealed "some mild focal bulging" at L5-S1 that, "could encroach on the left S1 nerve root as it arises from the thecal sac".  The radiologist suggested, "clinical correlation". (T. 539).  The last treatment record from Dr. Bonavita is dated September 7, 2005.

---

[7] *See* www.medilexicon.com (last visited September 30, 2010).

(T. 689).  At that time, Dr. Bonavita noted, "negative SLR, motor 5/5, DTR's 2+, flex 70 degrees

and ext 10 degrees with pain". (T. 689).  Dr. Bonavita diagnosed plaintiff with LSS and

prescribed the same medications.

The ALJ discussed Dr. Bonavita's treatment and opinions and concluded:

> While Dr. Bonavita has treated the claimant for a number of years on
> a regular basis, his opinions are not well supported by medically
> acceptable clinical and laboratory diagnostic techniques.  Objective
> testing did not reveal any herniations.  The most that was found were
> bulging disc with possible encroachment.  The claimant repeatedly
> had negative straight leg raising, 2+ deep tendon reflexes, motor
> strength of 5/5 and only a twenty-five percent reduced range of
> motion.  Additionally, Dr. Bonavita never referred the claimant to an
> orthopedic specialist for her alleged back problems.  Further, the
> limitations reported by Dr. Bonavita are not consistent with the
> claimant's reported activities of daily living.  Given the above factors,
> Dr. Bonavita's opinions have been given minimal weight. (T. 26).

Upon review of the record, the Court finds that the limitations and opinions expressed by

Dr. Bonavita in the July 2005 Statement are not supported by Dr. Bonavita's treatment notes or

substantial evidence in the record.  Dr. Bonavita's conclusions regarding plaintiff's

abilities/functioning are far more limiting and vastly different from his treatment notes.

Throughout his six year course of treating plaintiff, Dr. Bonavita never opined that plaintiff

suffered from such extensive limitations.  Indeed, his office notes are devoid of any mention or

summary of functional limitations.  The treatment records provide details of the results of

plaintiff's physical examinations and reveal that Dr. Bonavita consistently found that plaintiff

exhibited negative straight leg raising and normal strength testing.  *See Wynn v. Astrue*, 617

F.Supp.2d 177, 184 (W.D.N.Y. 2009) (the significant limitations were not supported by objective

assessments such as range of motion and strength tests).  Dr. Bonavita never diagnosed plaintiff

with any impairment or injury other than LSS.  Dr. Bonavita is not an orthopedic specialist and

nowhere in his records did he suggest or refer plaintiff to an orthopedic specialist.[8]  *See Ceballos v. Apfel*, 2001 WL 199410, at *9 (S.D.N.Y. 2001) (the ALJ properly applied the treating physician rule as physician was not a specialist).   Dr. Bonavita never discussed the possibility of surgery with plaintiff and treated plaintiff conservatively with a course of physical therapy and medications.   *See DiVetro v. Comm'r of Soc. Sec.*, 2008 WL 3930032, at *10 (N.D.N.Y. 2008) (holding that the treating physician's RFC findings were in "stark contrast" to the physicians fairly conservative course of treatment without serious consideration of surgical intervention). The ALJ also correctly noted that Dr. Bonavita's opinions were rendered in the context of plaintiff's workers' compensation claim. Workers' compensation determinations are directed to the workers' prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.".  *Gray v. Chater*, 903 F.Supp. 293, 301, n. 8 (N.D.N.Y.1995).   Because disability for purposes of workers' compensation benefits is determined under a different standard than the standard used in the Social Security context, the ALJ was not bound to afford Dr. Bonavita's findings controlling weight.  *See Pollard v. Astrue*, 2009 WL 2156913, at *7 (N.D.N.Y. 2009) (citing *Dibernardo v. Chater*, 979 F.Supp. 238, 243 (S.D.N.Y. 1997)).

In addition to the inconsistency between the Dr. Bonavita's opinions and treatment records, the objective medical evidence does not support such extensive limitations.  *Dumas v. Comm'r of Soc. Sec.*, 2008 WL 4104685, at *4 (E.D.N.Y. 2008) (holding that the ALJ did not err in refusing to give great weight to the opinions of the plaintiff's treating physicians because their

---

[8] In October 2007, Dr. Bonavita stated that he referred plaintiff to Craig Montgomery, M.D., a neurosurgeon. However, Dr. Montgomery did not begin treating plaintiff until July 2006, six months after the ALJ rendered his decision.

opinions indicated that the plaintiff's abilities were much more limited and restricted than the opinions of other medical consultants and inconsistent with bulk of the plaintiff's medical records).  Plaintiff underwent four MRI studies of her lumbar spine and all are devoid of any reference to herniated discs.  The radiologist who reviewed the results of the 2005 MRI study indicated possible encroachment but recommended clinical correlation. (T. 539).  There is no objective testing supporting the extensive limitations detailed by Dr. Bonavita.  Indeed, on July 28, 2002, Dr. Bonavita described plaintiff's 2000 MRI scans as, "negative".  (T. 405).

Moreover, the restrictions and limitations described by Dr. Bonavita are in conflict with plaintiff's testimony regarding her daily activities.  During the hearing, plaintiff testified that she is able to do light housework including dusting, laundry and cooking. (T. 722).  Plaintiff also testified that she is able to do some gardening, that she can ride on a lawnmower for less than 30 minutes and that she can ride on her boat and fish for 30 - 60 minutes.  (T. 722-23).   Plaintiff still visits with family and friends. (T. 723).  Based upon plaintiff's own testimony, the ALJ properly declined to afford controlling weight to Dr. Bonavita's opinions.  *See Cruz*, 2006 WL 1228581, at *13 (holding that a finding of incapacity was inconsistent with the plaintiff's own conduct); *see also Coyle v. Apfel*, 66 F.Supp.2d 368, 377-378 (N.D.N.Y. 1999) (holding that ALJ properly refused to afford controlling weight to treating physicians opinion that was inconsistent with the medical evidence and the evidence of plaintiff's daily activities).

Therefore, although the Court is aware that deference should be accorded to Dr. Bonavita's opinions pursuant to the treating physician rule, the ALJ articulated "good reasons" for failing to afford the opinions such weight.  *See McArthur v. Comm'r of Soc. Sec.*, 2008 WL 4866049, at *15 (N.D.N.Y.2008).  Consequently, the Court finds that substantial evidence exists

to support the ALJ's decision to afford "minimal weight" to his assessments.

**B.    Reliance Upon Opinions of Consulting Examiners as Support for RFC**

Plaintiff argues that the ALJ erred when he used, as foundation for his RFC decision, the findings of Dr. Kalyani Ganesh and "a State medical consultant's opinion from August 2004". (Dkt. No. 15, p. 9).  Defendant argues that the medical and non-medical opinions are consistent with the ALJ's finding that plaintiff could perform medium work and constitute substantial evidence.  (Dkt. No.19, p. 7).

Pursuant to 20 C.F.R. § 404.1527(1), every medical opinion, regardless of its source, must be evaluated.  A non-examining source's opinion, including the opinions of state agency medical consultants and medical experts, will generally be given less weight than an examining source's opinion. 20 C.F.R. § 416.927(d)(1); *see also Pogozelski v. Barnhart*, 2004 WL 1146059, at *13 (E.D.N.Y. 2004) (opinions of non-examining sources entitled to even less weight than an examining consultative physician's opinion).   An opinion, which is based solely on a single examination of plaintiff, deserves limited weight.  *See Crespo v. Apfel*, 1999 WL 144483, at *7 (S.D.N.Y. 1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day.").  Furthermore, "the opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override the diagnosis of a treating physician. *Garzona v. Apfel*, 1998 WL 643645, at *1 (E.D.N.Y. 1998).

However, it is well settled that an ALJ is entitled to rely upon the opinions of both

examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *Coffie v. Comm'r of Soc. Sec.*, 2009 WL 2045618, at *7 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b) (6), 416.913(c), and 416.927(f)(2)). Such reliance is particularly appropriate where the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence. *Id*. (citation omitted).

On July 15, 2004, Kalyani Ganesh, M.D., examined plaintiff at the request of the agency.[9] Upon examination, Dr. Ganesh noted that plaintiff was not in acute distress. Plaintiff's gait was normal, she exhibited a full range of motion in her lumbar spine and displayed negative straight leg raising bilaterally. (T. 608). Dr. Ganesh diagnosed plaintiff with chronic neck/lower back pain and opined that plaintiff had, "no gross limitation noted to sitting, standing, walking, and climbing. She has moderate limitation to lifting, carrying, pushing and pulling". (T. 609).

On August 9, 2004, at the request of the agency, "Medical Consultant Wakeley" completed an Electronic Request for Medical Advice. (T. 611). The medical consultant concluded that, "[m]us/skel - MRI shows no herniation or stenosis. Current exam is completely normal. From an ortho POV could sit 6, w/s 6 and lift 50 pounds." (T. 611).

The ALJ considered Dr. Ganesh's opinion and found:

> Consultative examiner, Dr. Ganesh opined that the claimant had no gross limitation to sitting, standing, walking, or climbing and moderate limitations to lifting, carrying, pushing and pulling. The consultative examiner personally examined the claimant. Further, her assessment is generally consistent with other sources of record. Thus, her opinion is entitled to some weight. (T. 25).

---

[9] Dr. Ganesh's report is entitled "Internal Medicine Examination". (T. 606). The record does not indicate whether Dr. Ganesh specialized in any area of medicine.

The ALJ also discussed Wakeley's opinion and concluded:

> The State medical consultant is not an examining source, but because he reviewed the evidence of record, reached his conclusions based on such review and provided a rationale for his conclusions, pursuant to the above-cited regulation and Social Security Ruling 96-6p, his opinions are entitled to some weight. (T. 25).

Even assuming that the ALJ assigned appropriate weight to Dr. Ganesh and Wakeley's opinions, upon a review of the record, the Court finds that the RFC determination is not supported by substantial evidence.  It is clear that the ALJ should not have given the state agency medical consultants' opinions more than limited weight.   Dr. Ganesh examined plaintiff only once and nowhere in Dr. Ganesh's opinion did she provide any functional analysis regarding plaintiff's limitation.  Dr. Ganesh simply stated that plaintiff suffered from "moderate limitation".   Further, that the state agency consultant, Wakeley, never examined plaintiff and although the ALJ stated that Wakeley "reviewed the evidence of record", his report makes no mention of what, if any, records he reviewed.  Upon a review of the record, the Court finds that the assessments of Dr. Ganesh and Wakeley cannot constitute "substantial evidence" in support of the RFC analysis.

With regard to the RFC, the Court is troubled by the fact that although the ALJ assigned only "some weight" to Wakeley's assessment, the RFC determination contains the same limitations.  Moreover, the ALJ cited to no other evidence or opinion in support of his conclusion that plaintiff could perform "medium work".  Indeed, the only other functional analysis in the record is the January 2005 Physical RFC Assessment prepared by B. Anderson. (T. 654).  In the decision, the ALJ referred to the analysis but did not specifically assign weight to the assessment and concluded, ". . . it is not a medical source opinion entitled to weight under

the above-cited regulation and Social Security Ruling 96-6p.  However, it is consistent with other sources".[10] (T. 25).  The Court is equally concerned that while the ALJ failed to assign weight to Anderson's opinions, the ALJ essentially adopted Anderson's functional assessment. The Court finds that the ALJ clearly relied upon the opinions of these non-physician examiners whose qualifications are unknown.  Thus, the Court is unable to find that the RFC determination is supported by substantial evidence.  *See Gladding v. Comm'r of Soc. Sec.*, 2008 WL 4104690, at *10 (N.D.N.Y. 2009).

       The record lacks substantial evidence to support the ALJ's assessment of plaintiff's RFC and the conclusion that plaintiff could perform "medium work".  Remand is appropriate in instances, such as this, when the reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision."  *Williams v. Callahan*, 30 F.Supp.2d 588, 594 (E.D.N.Y. 1998) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  Upon remand, the ALJ must correct these errors and comply with the requirements of SSR 96-8p.  Upon remand, the ALJ shall re-evaluate the medical opinions of plaintiff's treating physicians, examining physicians and non-examining consultants according to the Commissioner's Regulations.

**C.     Credibility**

       Plaintiff challenges the ALJ's credibility analysis.  Plaintiff contends that the ALJ committed an error of law in neglecting to give acceptable factual support for why plaintiff's allegations were not credible and further, that the ALJ failed to explain the factors listed in SSR

---

       [10] In the Physical RFC, Anderson concluded that plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds; stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. (T. 655).

96-7p. (Dkt. No. 15, p. 18).  The Commissioner contends that the ALJ properly found that plaintiff's allegations were not entirely credible. (Dkt. No. 19, p. 12).

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]" *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) .  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence.  *See* Social Security Ruling 96-7p, 1996 WL 374186, at *2; *see also Cloutier v. Apfel*, 70 F.Supp.2d 271, 278 (holding that although the ALJ's decision contained a discussion of the medical evidence and a summary of the plaintiff's subjective complaints, the decision did not provide a sufficient analysis of the evidence to support the lack of credibility finding).

16

The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus*, 615 F.2d at 27; *Snell*, 177 F.3d at 135 (holding that an ALJ is in a better position to decide credibility).  When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief[.]" *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987).  If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).   A reviewing court's role is merely to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints. *Aponte*, 728 F.2d at 591 (quotations and other citations omitted).

In this matter, the ALJ stated:

> The claimant alleges total disability, yet reported being able to cook, clean, do laundry, shop and shower and dress daily.  Furthermore, her allegations regarding the nature and degree of her alleged impairments and limitations are not supported by the medical evidence or the longitudinal medical record.  The claimant has made a lot of allegations, but the evidence of record does not substantiate the majority of them.  Having considered the medical evidence and the claimant's testimony, I conclude that the claimant's allegations as to the limiting effects of her impairments are not entirely credible, at least not to the extent that she would be unable to perform work at any level of exertion. (T. 24-25).

Plaintiff argues that, "it is a far reach to get from 'any level of exertion' to the plaintiff being able to lift 50 pounds".  (Dkt. No. 15, p. 16).  Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ did not properly assess plaintiff's

credibility.  The ALJ made generalized statements regarding plaintiff's "allegations" but failed to

explain the basis for the credibility determination under 20 C.F.R. § 404.1529 or SSR 96-7p.  The

ALJ discussed the lack objective medical evidence in contrast to plaintiff's description of her

limitations.  However, in addition to objective evidence, the ALJ was required to consider the

factors enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(iv) and give specific reasons for the weight

assigned to plaintiff's testimony.  *See Perez v. Barnhart,* 440 F.Supp.2d 229, 234-235 (W.D.N.Y.

2006) (citing *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003) (holding that the

lack of objective medical evidence is one factor to consider in evaluating the claimant's

credibility)); *see also Obstarczyk v. Astrue*, 2009 WL 3698421, at *7 (W.D.N.Y. 2009) (holding

that because the ALJ found the plaintiff's statements were not substantiated by objective medical

evidence, he was required to make a finding as to the plaintiff's credibility and give specific

reasons).  It is unclear, from the decision, whether the ALJ properly considered these factors.  The

ALJ did not summarize or analyze plaintiff's subjective complaints of pain.  The ALJ failed to

evaluate or even discuss plaintiff's medication[11]; the location and severity of pain; aggravating

factors; or other treatment measures.  Moreover, although the ALJ cited to plaintiff's "daily

activities", the ALJ referred to plaintiff's statements to Dr. Ganesh in July 2004, not to her

administrative hearing testimony which was conducted 18 months later.  Indeed, the ALJ failed to

cite or discuss any portion of plaintiff's testimony.  When the ALJ rejected plaintiff's claims

solely because the available medical evidence did not substantiate plaintiff's claims, he failed to

comply with the Regulations.  *Simone v. Astrue*, 2009 WL 2992305, at *11 (E.D.N.Y. 2009) (the

ALJ erroneously relied solely on the lack of objective evidence to discredit the plaintiff's

---

[11] During the hearing, plaintiff's attorney submitted a list of thirteen different medications to the ALJ.
Plaintiff testified that she took the medications everyday and that she suffered from side-effects.  (T. 708-709).

symptoms and failed to comply with the regulations requirements for evaluating credibility).

The Commissioner argues that the record demonstrates that medication helped control plaintiff's pain and further, that plaintiff's testimony regarding her daily activities including dusting, gardening in her flower bed and riding on her lawn mower, sitting on her boat and visiting with friends, "cast doubt on the credibility of plaintiff's allegations". (Dkt. No. 19, p. 11-12). This testimony may have been considered by the ALJ and may support a finding that plaintiff was not credible. However, the ALJ never discussed plaintiff's medications nor did the ALJ refer to these daily activities. "Credibility determinations are to be made by the ALJ in the first instance and rationales offered by the Commissioner post-hoc in an attempt to plug the holes in the ALJ's decision are not permissible". *LoRusso v. Astrue*, 2010 WL 1292300, at *5 (E.D.N.Y. 2010) (citations omitted); *see also Snell*, 177 F.3d at 134 ("a reviewing court 'may not accept counsel's post hoc rationalizations for agency action'")) .

Consequently, the Court is left with no basis upon which to determine whether the appropriate legal standards were applied, nor can it evaluate whether the ALJ considered the entire evidentiary record in arriving at his conclusion. *See Harrison v. Sec'y of Health and Human Servs.*, 901 F.Supp. 749, 757 (S.D.N.Y. 1995).  As a result, the Court remands this case for a determination of plaintiff's credibility which must contain specific findings based upon substantial evidence in a manner that enables effective review.

**D.      Sentence Six Remand**

Plaintiff argues that new evidence, not previously available to the ALJ or Appeals Council,  supports plaintiff's contentions and would have resulted in a favorable decision for plaintiff. (Dkt. No. 15, p. 18).  Specifically, plaintiff has attached treatment records from Craig

Montgomery, M.D., a neurosurgeon.  Plaintiff first sought treatment with Dr. Montgomery in July

2006, at the request of Dr. Bonavita.  Plaintiff had three follow up visits with Dr. Montgomery

and underwent one MRI study, on May 18, 2007.[12]  The Commissioner contends that a "sentence

six remand" is not appropriate as the evidence is not material.  (Dkt. No. 19, p. 13).

Sentence six of 42 U.S.C. § 405(g) provides in pertinent part:

> The court may, on motion of the Commissioner of Social Security
> made for good cause shown before the Commissioner files the
> Commissioner's answer, remand the case to the Commissioner of
> Social Security for further action by the Commissioner of
> Social Security, and it may at any time order additional evidence to be taken
> before the Commissioner of Social Security, but only upon a showing
> that there is new evidence which is material and that there is good
> cause for the failure to incorporate such evidence into the record in a
> prior proceeding.

A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative

evidence proffered to the district court should be considered at the agency level.  *Mumm v.*

*Comm'r of Soc. Sec.*, 2008 WL 686787, at *8 (N.D.N.Y. 2008) (citing *Lisa v. Sec'y of Dep't of*

*Health and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991)).   The Court must consider

whether: (1) the additional evidence is new, rather than merely cumulative; (2) the evidence is

material, that is, relevant to the time period for which benefits were denied, probative, and

reasonably likely to have altered the administrative decision if known at the time; and (3) good

cause exists for the failure to present the evidence earlier.  *Tirado v. Bowen*, 842 F.2d 595, 597

(2d Cir.1988).  "For new evidence to be material, it must be 'both relevant to the claimant's

condition during the time period for which benefits were denied and probative,' and there must

exist 'a reasonable possibility that the new evidence would have influenced the [Commissioner]

---

[12] A copy of the MRI study is also included in plaintiff's submission.

to decide claimant's application differently.'" *Bradley v. Barnhart*, 87 F.App'x 190, 192 (2d Cir. 2003) (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)).  There is jurisdictional significance as to whether a remand is entered pursuant to sentence four or sentence six of § 405(g).  *Raiport v. Callahan,* 183 F.3d 101, 104 (2d Cir. 1999).  Sentence four remands are appealable as a final judgment disposing of the action whereas sentence six remand orders are interlocutory because the district court retains jurisdiction over the action.[13]  *Id*.

Since this court is recommending remand for the reasons previously stated, the court does not need to assess whether the records submitted by plaintiff constitute "new and material evidence" for purposes of a remand under sentence six of section 405(g).  *Bula v. Comm'r of Soc. Sec*., 2009 WL 890665, at *12 (N.D.N.Y. 2009).  The issue of whether Dr. Montgomery's records should or can be considered by the ALJ should be addressed by the ALJ in the first instance on remand.  *See Tornatore v. Barnhart*, 2006 WL 3714649, at *6, n. 5 (S.D.N.Y. 2006).

**IV.    CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral to a Magistrate Judge has been **RESCINDED**, as such, any appeal taken from this Order will be

---

[13] Sentence four provides:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g).

to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: September 30, 2010
      Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

22